## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRACTUS, S.A. | § | |
| | § | |
| *Plaintiff,* | § | Case: 1:18–mc–00150 |
| | § | Assigned To : McFadden, Trevor N. |
| *v.* | § | Assign. Date : 10/22/2018 |
| | § | Description: Misc. |
| AT&T MOBILITY LLC, | § | |
| | § | |
| *Defendant.* | § | |

### NON-PARTY SBA COMMUNICATIONS CORPORATION'S MOTION TO QUASH PLAINTIFF FRACTUS, S.A.'S SUBPOENA AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH[1]

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Non-Party SBA Communications Corporation (referred to herein as "SBA") moves the Court to quash Plaintiff Fractus, S.A.'s Subpoena ("Plaintiff" or "Fractus"), attached as Exhibit A. In support of this Motion and as good cause for this request, SBA would show the Court as follows:

### I.   BACKGROUND

SBA is engaged in the business of leasing space on cell phone towers to wireless carriers across North, Central, and South America. *See* Exhibit B, Affidavit of Jason Silberstein at ¶3. SBA operates over sixteen thousand (16,000) towers in the United States alone. *Id.* While SBA owns the towers that it leases, the carriers own and operate the base station equipment and antennas that are installed on SBA's towers. *Id.* at ¶4. SBA itself does not perform any communication activities, and thus, has no need to own antennas or similar equipment. *Id.*

On April 19, 2018, Plaintiff Fractus filed suit against AT&T Mobility ("AT&T"), alleging

---

[1] Non-party SBA Communications Corporation files this Motion in the District of Columbia as the Court "where compliance is required" under the terms of the Subpoena, in accordance with Rule 45(d)(3)(B). The matter in which this Subpoena was issued, and issuing Court, are *Fractus, S.A. v. AT&T Mobility, LLC, et al.,* C.A. No. 2:18-cv-00135-JRG, in the United States District Court for the Eastern District of Texas, Marshall Division. SBA is contemporaneously requesting transfer of this motion.

that AT&T infringed on Plaintiff's patents for multiband antenna arrays and slim triple band antenna arrays. *See* Complaint for Patent Infringement at ¶¶ 20-35. On May 30, 2018, Plaintiff's case against AT&T was consolidated with similar patent infringement suits Plaintiff initiated against Sprint Communications Company, L.P. ("Sprint"), T-Mobile US, Inc. ("T-Mobile"), and Verizon Communications Inc. ("Verizon"). AT&T, Sprint, T-Mobile, and Verizon (collectively, "Defendants") represent the overwhelming majority of the wireless carrier market. Exhibit B at ¶5. Defendants also happen to be leasing tower space from SBA. *Id.* at ¶6

SBA has never been a party to any of the individual lawsuits against any Defendant. Likewise, SBA is not currently, and has never been a party to the consolidated litigation. On September 10, 2018, Plaintiff served a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Subpoena"), a copy of which is attached as **Exhibit A**. The Subpoena was issued by counsel out of this Court. *See* Exhibit A. It directs SBA to produce documents at Kobre & Kim, LLP's Washington, D.C. office. *See* Exhibit A. As explained below, the Subpoena is procedurally defective, overly broad and vague, unduly burdensome, and improperly seeks confidential and protected information. Thus, it should and must be quashed.

## II.   ARGUMENT AND AUTHORITIES

The Subpoena suffers from profound defects that require this Court to quash it. First, it is procedurally defective because it exceeds the geographical limits of Fed. R. Civ. P. 45(c)(2)(A). Beyond this technical, yet fatal, flaw the Subpoena should be quashed because it poses an undue and extreme burden on non-party SBA in a manner that is inapposite and contrary to Fed. R. Civ. P. 45(d)(3)(A)(iv), as discussed further below. Both of these flaws require this Court to quash the Subpoena. Finally, this Court should quash the Subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(B)(i)

because it is unduly invasive and seeks trade secrets and/or other confidential commercial information of non-party SBA.

## A.    The Subpoena is Procedurally Deficient

An important facet of Rule 45 is to restrict geographically the scope of production. Accordingly, pursuant to Fed. R. Civ. P. 45(c)(2)(A), a subpoena may not command an entity to produce documents more than 100 miles from where it "resides, is employed, or regularly transacts business in person." SBA's principal place of business is its Boca Raton, Florida headquarters. Exhibit B at ¶2. Indeed, SBA was served in Palm Beach Gardens, Florida, over one thousand (1,000) miles away from the place of compliance. *See* Exhibit A. Thus, the Subpoena purports to require SBA to produce documents, ESI, or tangible things beyond the geographical limits of Fed. R. Civ. P. 45(c)(2)(A), indeed ten times further. This is contrary to the terms of the Rules. This procedural deficit <u>requires</u> that the Subpoena be quashed pursuant to Fed. R. Civ. P. 45(d)(3)(A)(ii).

## B.    The Subpoena Subjects SBA to an Undue Burden

Further, the Subpoena must also be quashed because it subjects SBA to an undue burden. Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv), a subpoena which imposes an undue burden on a non-party must be quashed. As the moving party, SBA bears the burden of proving that compliance with the subpoena would be unreasonable and oppressive. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Determining whether the claimed burden is "undue" requires the court to weigh the issuing party's needs against the recipient's burden. *See Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004), abrogated on other grounds by *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237 (2010)).

Here, the factors weigh heavily against Plaintiff as the issuing party. Although a more

fulsome analysis is set forth below, perhaps most notably, Plaintiff seeks from non-party SBA over one hundred thousand (100,000) documents that would be in the possession of the Defendants in this case. Non-party status is a significant factor that courts must consider when assessing whether an undue burden exists. *WM High Yield v. O'Hanlon*, 460 F. Supp.2d 891, 895-96 (S.D. Ind. 2006).

To determine whether a subpoena presents an undue burden, Courts typically consider the following factors: (1) the time period covered by the request; (2) the particularity with which the party describes the requested documents; (3) the burden imposed; (4) whether compliance with the subpoena implicates privacy interests; (5) expense and inconvenience to the non-party; (6) relevance of the information requested; (7) whether the sought-after evidence is more readily available from another source; (8) the need of the party for the documents; and (9) the breadth of the document request. *See Wiwa.*, 392 F.3d at 818 (5th Cir. 2004); *see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y.1996); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D.Tex.1998); *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 927-32 (7th Cir. 2004); *Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002)).

1.      **Plaintiff Fails to Limit Its Request to a Reasonable Time Period**

Plaintiff failed to limit its requests to any defined time period; consequently, SBA is left to assume is has been asked to produce all responsive documents available across its entire corporate history. SBA was founded in 1989. Exhibit B at ¶2. For a corporation of SBA's size, it is an immense undertaking and an undue burden to search through *almost 30 years of documents. Id.* at ¶2, 11-12.

SBA has obtained a copy of Plaintiff's Complaint for Patent Infringement against AT&T. All of the patents Plaintiff accuses AT&T of infringing were issued in 2005 or later. *See* Complaint

for Patent Infringement at ¶¶ 36, 46, 56, 66, 76, 86, 96, 106, 116, and 126. Plaintiff has plainly made no effort to reasonably limit the time frame applicable to its requests. Contrary to Fed. R. Civ. P. 45's mandate that a party issuing a subpoena avoid imposing an undue burden or expense upon a non-party, Plaintiff did not even attempt to limit its requests to the years during which it held the patents in controversy. SBA should not have to shoulder the undue burden posed by Plaintiff's failure to limit its requests to a reasonable time period.

**2.      Plaintiff Does Not Describe the Requested Documents with Particularity**

Further, Plaintiff failed to define key terms or otherwise describe what is sought with particularity, causing an undue burden and increasing the difficulty of any search for responsive documents. For instance, Request No. 4 vaguely calls for "[d]ocuments sufficient to determine" for each of SBA's towers the "physical or legal requirements or restrictions" relating to mounting of antennas, the number of antennas on each tower, and tower capacity, yet Plaintiff has provided no guidance as to what it means by "physical or legal requirements or restrictions" nor what documents would be sufficient to determine these undefined categories of information. Moreover, the phrase "base station antenna" is at the heart of six of Plaintiff's eight requests, yet Plaintiff has failed to give SBA adequate guidance as to what it seeks via this phrase. *See* Exhibit A at Definitions, Request Nos. 1-5, and Request No. 7. As another example, Request No. 5 seeks all documents related to "site sharing" on SBA's towers, yet Plaintiff gives SBA no context for what it means by this phrase. This factor further evidences the undue burden placed on SBA by the Subpoena.

**3.      The Burden Imposed on SBA to Search for and Produce the Volume of Documents Requested is Immense**

The sheer volume of documents that Plaintiff seeks from non-party SBA is staggering and oppressive. By way of example, Request No. 1 seeks "all contracts and agreements with any

Defendant relating to base station antennas." Since the ultimate reason any Defendant would be leasing tower space is to install base station antennas, this request essentially seeks *every contract and agreement* SBA has with any Defendant to lease tower space. Exhibit B at ¶7-8. As written, every contract and agreement with SBA's four biggest customers as to over **sixteen thousand (16,000)** tower sites since the inception of SBA's existence thirty years ago falls within the scope of this request. *Id.* at ¶2-9. Defendants are tenants to over 27,000 current leases with SBA, and were tenants on thousands of terminated or expired previous leases. *Id.* at ¶6. It is common for SBA to enter into multiple amendments with wireless carriers for each of the leases. *Id.* SBA likely possesses hundreds of thousands of documents that would be considered responsive to Request No. 1 alone. *Id.* at ¶9. Request No. 5, which seeks "all documents related to site sharing on your towers, cell sites and other space for base station antennas involving any of Defendants," suffers from similar issues. Likewise, Request No. 3, which calls for all "[d]ocuments reflecting [SBA's] revenues and profits resulting from the contracts and agreements responsive to Request 1," also seeks a burdensomely voluminous number of documents. Clearly, the volume of documents the Subpoena seeks from non-party SBA is evidence that the Subpoena is unduly burdensome, and compliance would foist undue costs on the non-party.

4.    **The Subpoena Seeks Confidential Information and Invades the Privacy of SBA's Confidential Information**

Request No. 3 is a prime example of how the Subpoena implicates SBA's privacy interests. It seeks confidential, proprietary information regarding SBA's revenues and even profits. Plaintiff further increases the burden on SBA by specifying that SBA is to produce documents demonstrating "revenue from Defendants per month, per antenna, and per tower." Further, the contracts and agreements show the location of ground leases, perpetual easements, and other information that could be leveraged by competitors to SBA's detriment. The immense burden and

expense imposed on non-party SBA to comply with such a request outweighs any likely benefit, especially in the absence of any evidence of the relevance of such sensitive data in such a specific format.

5.    **The Subpoena Imposes Immense Expense and Inconvenience on Non-Party SBA**

Producing hundreds of thousands of documents would be an <u>expensive inconvenience</u> for SBA. Considering that these requests seek documents related to the vast majority of SBA's 16,000 tower sites, a search of this magnitude will be disproportionately disruptive to SBA's business operations. *See* Exhibit B. Multiple personnel across multiple departments would be required to divert time from their regular business activities in order to search for the documents at issue. *Id.* at ¶11. The cost of transmitting and hosting the data alone will be immense, to say nothing of the legal fees that would be incurred in a document review of this size. To ask a non-party to disrupt its business to the level necessary for an adequate search and then incur the technical and legal fees necessary to produce the documents certainly rises to the level of an undue burden.

6.    **The Relevance of the Information Requested Appears to be Minimal**

There appears to be no connection between the documents the Subpoena requests from SBA and the evidence Plaintiff would need to prove that its antenna patents have been infringed upon. SBA is not in the business of buying or owning communication equipment. Exhibit B at ¶4. It simply leases space on its towers for wireless carriers to install their own equipment. *Id.* at ¶3-4. Thus, as an entity that does not own or directly use antennas, it is highly unlikely that SBA would have information relevant to Plaintiff's patent infringement claims even if Plaintiff were to propound a properly crafted request. Moreover, Plaintiff repeatedly seeks documents and information related to "base station antennas" without restricting the term to mean antennas of a similar type to those at issue. *See* Exhibit A at Request Nos. 1-5, Request No. 7. Contracts,

documents, and information regarding antennas with no similarity to the antennas whose patents are at issue clearly do not have any relevance to this case. Further, Request No. 4 seeks broad-sweeping categories of documents regarding SBA's tower sites without regard for whether the documents requested have any connection to the Defendants in this case or the patents at issue. The irrelevance of Plaintiff's requests is one of many reasons why the Subpoena is unduly burdensome.

7.    **The Requested Documents Are More Readily Available From Other Sources**

All conceivably relevant documents requested are available from other sources. The very first request to non-party SBA seeks "[a]ll contracts and agreements *with any* Defendant[...]" almost by definition calls for documents that would be in the possession of Defendants, and which can and should be discovered from each Defendant. Moreover, the request for items such as "contracts and agreements with any base station manufacturer or base station antenna regarding any base station antenna used by any Defendant" (Request No. 2) would presumably be in possession of the Defendants that are parties to such contracts, not non-party SBA.[2] Plaintiff may propound requests for the documents sought by Request No. 2 directly to Defendants. Remarkably, Request No. 8 even seeks "communications with Defendants about Fractus or the patents-in-suit." Clearly, Plaintiff could again request those communications from Defendants, who would presumably have all such communications and who are parties to this case. When a party requesting a subpoena has failed to show that it has attempted to obtain documents from appropriate parties to the case before seeking those documents from non-parties, this factor weighs in favor of a finding that the request places an undue burden on the non-party. *See WM High Yield*, 460 F.Supp.2d at 896.

---

[2] Defendants are responsible for obtaining and providing their own antennas, not SBA. Exhibit B at ¶7.

Furthermore, as to information regarding patents, this information is equally available to Plaintiff from the United States Patent and Trademark Office. To the extent they exist, Plaintiff can easily acquire any "patent licenses and patents concerning or relating to multiband base station antenna technology" (Request No. 7) from publically available records maintained by the United States Patent and Trademark Office. Additionally, the overly broad and vague Request No. 4 seeks information that is publicly available, such as zoning restrictions. There is no discernable reason why as a non-party, SBA should be required to endure the burden and expense of producing documents Plaintiff can obtain from other sources.

8.    **There Is No Need for SBA to Produce the Requested Documents**

To the extent the Subpoena seeks documents that Plaintiff cannot obtain from Defendants or that are not publicly available, there is no need for the requested documents to be produced in this case in order for Plaintiff to prove its claims. By way of example, Plaintiff's request for documents reflecting SBA's revenues and profits are clearly unnecessary since SBA Plaintiff does not contend that SBA has infringed upon any of the patents at issue. Further, documents evidencing the "physical [...] requirements or restrictions relating to the mounting of base station antennas on such towers, including wind load restrictions, weight restrictions, aesthetic restrictions and zoning restrictions" targets physical information about SBA's towers rather than any relevant information about the technical specifications of any equipment tenants may install on those towers. Plaintiffs simply do not need the information they seek from SBA to advance their patent infringement claims. It would be unduly burdensome to require non-party SBA to endure the time and expense of responding to the Subpoena in order for Plaintiff's to obtain documents that are not necessary to prove its claims.

9.    **The Subpoena is Facially Overbroad**

Finally, a court may find that a subpoena presents an undue burden when the subpoena is

facially overbroad. *Wiwa*, 392 F.3d at 818. Requests to a non-party seeking all documents concerning the parties to an action, regardless of whether those documents relate to the action or the date, are facially overbroad. *In re O'Hare*, Misc. Action No. H–11–0539, 2012 WL 1377891 at *2, (S.D. Tex. Apr. 19, 2012). Request No. 5 seeks "all documents related to site sharing on your towers, cell sites, and other space for base station antennas involving any of the Defendants." SBA's business is leasing space on towers to wireless carriers, including Defendants, upon which the tenants typically install antennas. Exhibit B at ¶3-4. More often than not, the space at these tower sites is shared by more than one tenant. *Id.* at ¶3. Arguably *almost every document SBA possesses related to Defendants* would be responsive to this request due to the nature of SBA's business. *Id.* at ¶8. Thus, Request No. 5 is facially overbroad. While perhaps not quite as wide-sweeping as Request No. 5, Request Nos. 1, 2, 3, 6, and 8 also pose grossly overbroad requests for various contracts, agreements, and communications related to Defendants regardless of whether those documents have any relation to Plaintiff's patent infringement claims. The overbreadth of the Subpoena is further evidence that it is unduly burdensome.

## C.   The Subpoena Seeks Confidential, Trade-Secret Information

A Court may also quash a subpoena that requires the recipient to disclose "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). When determining whether the information at issue is the type of confidential information this Rule was designed to protect, Courts often assess whether it is important proprietary information, whether the non-party has consistently endeavored to keep such information confidential, and whether release of the information would unfairly harm the disclosing party's ability to compete in the marketplace. *See Innovative Therapies, Inc. v. Meents,* 302 F.R.D. 364, 380 (D. Md. 2014); *Felicia v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5, 7

(D. D.C. 2006). Once the non-party establishes that the request seeks trade secret and/or confidential commercial information, the burden then shifts to the requesting party to demonstrate the necessity and relevance of the requested information. *See Innovative Therapies*, 302 F.R.D. at 380. If the requesting party cannot meet its burden, the motion to quash the subpoena under Fed. R. Civ. P. 45(d)(3)(B)(i) is typically granted.

SBA's contracts and agreements with its tenants often contain trade secrets and/or other confidential commercial information, including but not limited to information regarding the terms of SBA's leases with the ground owners and the terms SBA has agreed to with each tenant. Exhibit B at ¶12. This commercially sensitive information is important proprietary information which SBA has historically sought to keep confidential. *Id.* at ¶¶9-13. The Subpoena requests SBA produce essentially **all** of its contracts and agreements with Defendants, which include the locations of its tower sites and the terms of its leases of tower space to Defendants as well as SBA's leases with the ground owners. *See* Exhibit A at Request No. 1. Plaintiff also seeks "documents reflecting [SBA's] revenues and profits" relating to essentially all of its contracts with Defendants, and specifically request "documents reflecting, for each category (e.g., leasing, maintenance) revenues from Defendants per month, per antenna, and per tower." *See* Exhibit A at Request No. 3. But the invasiveness of Plaintiff's requests does not stop there. Request No. 4 asks SBA to produce documents describing the "total number of base station antennas mounted on each tower" and "the total capacity (in terms of base station antennas) for each tower." Plaintiff has essentially instructed SBA to detail its maximum capacity to lease tower space to wireless carriers and to explain the extent to which that capacity is in use on a tower-by-tower basis. The competitive consequences to SBA were it required to produce such granular, detailed information outlining precisely how it currently generates revenue and where the potential for growth lies could be vast.

Exhibit B at ¶13.

When the Subpoena's requests may not be specifically targeting such sensitive information, they sweep in such broad strokes that it would be impossible for SBA to fully produce responsive documents without also turning over trade secrets and/or confidential commercial information. For example, Request No. 5 seeks "all documents related to site sharing on your towers, cell sites, and other space for base station antennas involving any of the Defendants." As previously explained, due to the nature of SBA's business, this essentially seeks every document SBA has related to Defendants. A full production of all responsive documents would inescapably require SBA to turn over documents containing trade secrets and/or confidential commercial information. Exhibit B at ¶10.

According to the Advisory Committee, Rule 45(d)(3)(B) identifies "circumstances in which a subpoena should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the witness." Plaintiff has not and cannot show a substantial need for the requested documents. As detailed above, many of the documents Plaintiff seeks from SBA (such as contracts involving Defendants, patent information, and publically available zoning regulations) can be acquired from other sources.[3] The vast majority of the remaining documents have nothing to do with Plaintiff's claims. As previously explained, requiring SBA to search for and produce these irrelevant documents would impose a significant and undue burden. Moreover, requiring SBA to produce such sensitive, confidential information would cause severe harm. Thus, the Subpoena should be quashed.

---

[3] SBA reserves the right to seek a protective order as to such information should Plaintiff demonstrate a substantial need for the information to be produced by SBA or Defendants.

## III.   PRAYER

Accordingly, non-party SBA Communications Corporation respectfully requests that this Court grant its Motion to Quash Plaintiff's Non-Party Subpoena, order Plaintiff Fractus to pay SBA's attorneys' fees and costs pursuant to Fed. R. Civ. P. 45(d)(1), and grant SBA all other relief to which it is entitled.

Respectfully submitted,

HOLLAND & KNIGHT, LLP

By: _____
Charles T. Jeremiah
Dist. D.C. Federal I.D. No. TX0060
charles.jeremiah@hklaw.com
1100 Louisiana Street, Suite 4300
Houston, TX 77002-5227
713-821-7000 (telephone)
713-821-7001 (facsimile)

**ATTORNEY FOR NON-PARTY SBA
COMMUNICATIONS CORPORATION**

## CERTIFICATE OF CONFERENCE

I hereby certify that, pursuant to Local Rule LCvR 7(m), I have conferred with counsel for Plaintiff Fractus, S.A. extensively via email and via a telephonic conference held on October 17, 2018 at 10:30 a.m. Central Time/11:30 a.m. Eastern Time. Despite extensive discussion of the issues with this Subpoena, including the improper place for compliance and a detailed review of SBA's objections to each request, the parties were unable to resolve the disputed issues presented in this motion. Plaintiff's counsel has indicated that Plaintiff is opposed to the quashing of its subpoena and the relief sought herein.

_____
Charles T. Jeremiah

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon all counsel of record for the interested parties as listed below in accordance with the Federal Rules of Civil Procedure via the Court's CM/EFT system on this the 22nd day of October, 2018.

Daniel A. Zaheer
Email: daniel.zaheer@kobrekim.com
Michael M. Rosen (admission pending)
Email: michael.rosen@kobrekim.com
KOBRE & KIM LLP
150 California Street, 19th Floor
San Francisco, CA 94111
(415) 582-4800 (Office)
(415) 582-4811 (Fax)

Hugham Chan (admission pending)
Email: hugham.chan@kobrekim.com
KOBRE & KIM LLP
1919 M Street, NW
Washington, DC 20036
(202) 664-1956 (Office)
(202) 510-2993 (Fax)

S. Calvin Capshaw
Email: ccapshaw@capshaw.com
Elizabeth L. DeRieux
Email: ederieux@capshawlaw.com
CHAPSHAW DERIEUX LLP
114 E. Commerce Avenue
Gladewater, TX 75647
(903) 845-5770 (Office)

T. John Ward Jr.
Email: jw@jwfirm.com
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, TX 75606
(903) 757-6400 (Office)
(903) 757-2323 (Fax)

Charles T. Jeremiah

# Exhibit A

Corporate Creations Network Inc.                                                September 10, 2018
11380 Prosperity Farms Road #221E, Palm Beach Gardens, FL  33410

SBA COMMUNICATIONS CORPORATION
Thomas (Tom)  Hunt  Senior VP and General Counsel
SBA Communications Corporation
8051 Congress Avenue
BOCA RATON   FL   33487

# SERVICE OF PROCESS NOTICE

The following is a courtesy summary of the enclosed document(s). **ALL information should be verified by you.**

Note:  Any questions regarding the substance of the matter described below, including the status or to whom or where to respond, should be directed to the person set forth in line 12 below or to the court or government agency where the matter is being heard.

Item: 2018-44

| | | |
|---|---|---|
| 1. | **Client Entity:** | SBA COMMUNICATIONS CORPORATION |
| 2. | **Title of Action:** | Fractus S.A. vs. AT&T Mobility LLC, et al. |
| 3. | **Document(s) Served:** | Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action<br>Attachment A |
| 4. | **Court/Agency:** | United States District Court for the Eastern District of Texas |
| 5. | **State Served:** | Florida |
| 6. | **Case Number:** | 2:18-cv-00135 |
| 7. | **Case Type:** | |
| 8. | **Method of Service:** | Hand Delivered |
| 9. | **Date Received:** | Monday 9/10/2018 |
| 10. | **Date to Client:** | Monday  9/10/2018 |
| 11. | **# Days When Answer Due:** 30<br>**Answer Due Date:** 10/10/2018 | **CAUTION:** Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of service in their records matches the Date Received. |
| 12. | **SOP Sender:**<br>(Name, Address and Phone Number) | Hughman Chan<br>Washington, DC<br>202-664-1956 |
| 13. | **Shipped to Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | Not Applicable |
| 15. | **Handled By:** | 101 |
| 16. | **Notes:** | |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At Corporate Creations, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process. To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective.  It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by Corporate Creations Network Inc.

P.L.

DATE 9-10-2018

CPS# 1530

TIME 1:45 PM

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Texas

| | |
|---|---|
| Fractus, S.A. | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   2:18-cv-00135 |
| AT&T Mobility LLC, et. al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:       SBA Communications Corporation, c/o Corporate Creations Network Inc.
11389 Prosperity Farms Road, Ste. #221E, Palm Beach Gardens, FL 33410

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Kobre & Kim, LLP | Date and Time: |
|---|---|
| 1919 M Street, NW | |
| Washington, DC 20036 | 10/10/2018 11:59 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       09/10/2018

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Fractus, S.A.                                                                , who issues or requests this subpoena, are:

Hugham Chan, Kobre & Kim LLP, 1919 M Street NW, Washington, DC 20036, 202-664-1956

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 2:18-cv-00135

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____           _____
                                          *Server's signature*

                                          _____
                                          *Printed name and title*

                                          _____
                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

The following definitions shall apply to this subpoena:

1. "Patents-in suit" shall mean and refer to U.S. Patent Nos. 6,937,191; 7,250,918; 7,557,768; 7,932,870; 8,228,256; 8,896,493; 9,905,940; 8,497,814; 8,754,824; and 9,450,305. When the term "patents-in-suit" is referred to by this subpoena, that reference is intended to include the patents themselves (both collectively and individually), the applications on which they issued, their prosecution history, and all foreign counterparts, including foreign applications and foreign prosecution histories.

2. The "Defendants" shall mean and refer to AT&T Mobility LLC; Verizon Communications Inc.; Cellco Partnership d/b/a Verizon Wireless; Sprint Communications Company L.P.; Sprint Spectrum L.P.; Sprint Solutions, Inc.; T-Mobile US, Inc.; T-Mobile USA, Inc.; and Nextel Operations, Inc. including (i) all subsidiaries thereof; (ii) all entities under the Defendants' control; (iii) any proprietorship, joint venture, partnership or other business corporation involving the Defendants; (iv) all of the Defendants' predecessors-in-interest, representatives, and successors-in-interest; (v) the present and former directors, officers, accountants, affiliates, attorneys, agents, employees, in-house and outside counsel and other persons under the control of the Defendants, regardless of their affiliation or employment; and (vi) any other person acting or purporting to act on behalf of the Defendants.

3. The terms "document" and "documents" are used in the broadest sense consistent with the meaning ascribed to those terms under Federal Rule of Civil Procedure 34(a) and include all drafts or copies that differ in any respect from the original, such as when copies contain any commentary or notation whatsoever that does not appear on the originals; communications;

correspondence; memoranda; records; reports; presentations; notebooks; journals or other periodicals; analyses; books; schedules; records, reports and/or summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; projections; studies; surveys; photographs; recordings; tapes; microfilms; minutes; records, reports and/or summaries of meetings or conferences; records and reports of consultants; press releases; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs or receipts; tape datasheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; and any paper or writing of whatever description.

4.   The terms "document" and "documents" also include any attachments or exhibits to the requested documents or any other documents referred to or incorporated by reference in the requested documents.  These terms also include physical objects and things, such as research and development samples, production samples, and prototype products.

5.   The terms "you," "your," and "SBA Communications" mean SBA Communications Corporation, and its related entities, including all subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and each of its employees, agents, officers, directors, representatives, members, consultants, accountants, attorneys, or anyone else acting on its behalf, including both individuals currently acting in such capacity and those who have done so in the past.

6.   The terms "include," "includes," and "including" are used "without limitation," e.g., "including without limitation" or "includes, but is not limited to."

7.   The terms "communication" or "communications" refer to any contact of any nature, whether written or oral, and includes, without limitation, written contact by means such as

advertisements, notes, letters, memoranda, telegrams, telex, electronic mail ("e-mail"), text messages, other electronic files, or oral contact including in-person meetings and conversations, teleconferences, and video conferences.

8.   The terms "relate," "relates," "related," and "relating" refer to commenting on, regarding, discussing, describing, mentioning, reflecting, constituting, identifying, stating, dealing with, connected with, analyzing, confirming, supporting, reporting, setting forth, considering, contradicting, refuting, repudiating, rebutting, undermining, pertaining to, evidencing, or concerning the subject matter of the document request, in whole or in part.

9.   The term "base station antennas" includes the antenna arrays therein.

10. The term "tower" refers to any location on which a base station antenna may be installed, including traditional cellular radio towers, cell sites, ground-based masts, rooftops and other existing structures, and raised structures.

11. The term "each" shall mean each and every.

12. The term "any" shall include the word all, and vice versa.

13. The terms "and," "or," and "and/or" shall be construed in the conjunctive or the disjunctive, whichever makes the document request more inclusive.

14. The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as is appropriate in the context.

15. Insofar as a term contained in these document requests is not explicitly defined, the meaning to be used is the commonly accepted definition of the term.

## **INSTRUCTIONS**

1.   You are required to produce all documents in the order, manner and form in which they are kept in the ordinary course of business, as required by Federal Rule of Civil Procedure Rule

34(b), including, where applicable, any index tabs, file dividers, designations or information as to the location of the documents.

2.   In responding to these requests for production, you are requested to furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or your agents, employees, representatives, subsidiaries, affiliates or attorneys.

3.   In lieu of making documents available for inspection and copying at the date and time specified on the face of the subpoena, you may produce exact copies of the requested documents on or before the date specified on the face of the subpoena, directed to the attention of the issuing officer of the subpoena.

4.   If you cannot respond to a document request fully, after a diligent attempt to attain the requested information, you must answer the document request to the extent possible, specify the portion of the document request you are unable to answer, and provide whatever information you have regarding the unanswered portion.

5.   In the event that any document called for by the document requests has been destroyed, lost, discarded or is otherwise no longer in your possession, custody or control, you shall identify such document as completely as possible, and shall specify the date of disposal of the document, the manner of disposal, the reason for disposal, the person authorizing the disposal, and the person disposing the document.

6.   In the event any information is withheld on a claim of attorney-client privilege or work product doctrine, you shall provide a privilege log that includes at least the following information: the nature of the information contained in the withheld document, the date of the document, its source, and subject matter, and to whom that information was disclosed, such as

would enable the privilege claim to be adjudicated, and any authority that you asserts supports any claim of privilege.

## DOCUMENTS REQUESTED

1.  All contracts and agreements with any Defendant relating to base station antennas, including such contracts and agreements regarding leasing or ownership of space on any of your towers, cell sites, masts, rooftop mounting positions or other space for such antennas, as well as contracts and agreements regarding the installation, maintenance, repair, removal, and operation of base station antennas on your towers, cell sites, masts, rooftop mounting positions or other space for such antennas.

2.  Contracts and agreements with any base station manufacturer or base station antenna manufacturer regarding any base station antenna used by any Defendant, including such contracts and agreements regarding costs associated with the leasing or ownership of space on any of your towers, cell sites, masts, rooftop mounting positions or other space for such antennas, as well as contracts and agreements regarding the installation, maintenance, repair, removal, and operation of base station antennas on your towers, cell sites, masts, rooftop mounting positions or other space for such antennas.

3.  Documents reflecting your revenues and profits resulting from the contracts and agreements responsive to Request 1, including (including) documents reflecting, for each category (e.g., leasing, maintenance) revenues from Defendants per month, per antenna and per tower.

4.  Documents sufficient to determine, for each tower, cell site, mast, rooftop mounting area, etc.:

   a.   physical or legal requirements or restrictions relating to the mounting of base station antennas on such towers, including wind load restrictions, weight restrictions, aesthetic restrictions and zoning restrictions;

   b.   the total number of base station antennas mounted on each tower; and

   c.   the total capacity (in terms of number of base station antennas) for each tower.

5.  All documents related to site sharing on your towers, cell sites and other space for base station antennas involving any of the Defendants.

6.  All documents concerning indemnification in relation to the Defendants or any patent-in-suit, including indemnity agreements.

7.  All patent licenses and patents concerning or related to multiband base station antenna technology.

8.  All documents mentioning Fractus or any of the patents-in-suit, including communications with the Defendants about Fractus or the patents-in-suit.

SEP 1 0 2018

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRACTUS, S.A. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | Misc. Action No. _____ |
| | § | |
| AT&T MOBILITY LLC, | § | |
| | § | |
| *Defendant.* | § | |

## DECLARATION OF JASON SILBERSTEIN

Before me, the undersigned authority, appeared Jason Silberstein, known to me to be the person whose name is subscribed hereto, and, after being duly sworn by me, stated as follows:

1.  My name is Jason Silberstein. I am currently employed by SBA Communications Corporation ("SBA") as Executive Vice President – Site Leasing. I am over twenty-one (21) years of age, of sound mind, and otherwise capable of making this declaration. The facts stated in this declaration are within my personal knowledge because they relate to events or occurrences in which I personally participated and which I have personally observed.   The statements contained herein are true and correct.

2.  SBA's principal place of business is Boca Raton, Florida. SBA was founded in 1989, and has been in operation for almost thirty (30) years. SBA does not regularly transact business within one-hundred (100) miles of Washington, D.C.

3.  SBA is engaged in the business of leasing space on cell phone towers to wireless carriers across North, Central, and South America. SBA operates over sixteen thousand (16,000) towers in the United States alone. More often than not, multiple tenants lease space on the same tower.

4.  SBA is not in the business of buying or owning communication equipment. SBA owns the towers that it leases, but it does not own nor operate the base station equipment and antennas installed on its towers. SBA itself does not perform any communication activities, and thus has no need to own antennas or similar equipment. SBA does not own or lease base station equipment or antennas, only towers.

5.  AT&T Mobility LLC ("AT&T"), Sprint Communications Company, L.P. ("Sprint"), T-Mobile US, Inc. ("T-Mobile"), and Verizon Communications Inc. ("Verizon") represent the overwhelming majority of the wireless carrier market.

6.  AT&T, Sprint, T-Mobile, and Verizon, either directly or through subsidiaries and/or affiliate entities, lease tower space from SBA. These entities are SBA's biggest customers. They are tenants to over 27,000 current leases, and were tenants on thousands of terminated or expired previous leases.   It is common for SBA to enter into multiple amendments with wireless carriers for each of the leases.

7.  The ultimate reason any wireless carrier would be leasing tower space is to install base station equipment and antennas. The wireless carrier tenants own and operate the base station equipment and antennas that they install on SBA's towers. The wireless carrier tenants are thus responsible for obtaining and providing their own antennas and equipment – SBA is not a party to such contracts.

8.  Because of the nature of SBA's business, almost every document it possesses related to a given tenant is also related to sharing of tower sites.

9.  SBA likely has hundreds of thousands of documents either directly related to AT&T, Sprint, T-Mobile, and Verizon or related to the subsidiaries or affiliate entities through which AT&T, Sprint, T-Mobile, and Verizon lease tower space from SBA.

10. The hundreds of thousands of documents referenced in paragraph 9 inescapably include some forms of trade secret and/or confidential commercial information. Such information may include, but is not limited to, the number of leases each tenant has with SBA, the location of such leases, the profits and revenues SBA receives from each tenant and lease, and future profit and revenue potential related to each tenant.

11. A search for the documents described by paragraphs 9-10 would require multiple personnel across multiple departments to divert substantial time from their regular business activities at a great cost and inconvenience to SBA.

12. It is SBA's practice to have outside counsel review documents before they are produced in response to a non-party subpoena request. This is in part because many of SBA's contracts and agreements relating to its tenants include trade secrets and/or confidential business information. Such information includes, but is not limited to, the exact locations of SBA's towers, the terms of leases SBA has with the ground owners of the sites at which SBA's towers are located, and the terms on which it leases tower space to tenants.

13. SBA takes great care to protect its proprietary, confidential commercial information, including the information described in paragraphs 9, 10, and 12. The competitive consequences to SBA were its proprietary, confidential information to be released could be far-reaching and extremely costly.

I declare under penalty of perjury that all the foregoing is within my personal knowledge and that it is true and correct.

Signed this 5th day of October, 2018.

JASON SILBERSTEIN